COOPER ET AL. V. PEOPLE EX REL. WYATT.

13  378
18  574

1. INTERFERENCE BY PRESS DURING PROGRESS OF TRIAL NOT A CONSTI-
TUTIONAL RIGHT.— During the pendency of a cause the court must
be permitted to proceed therein without molestation, in accord-
ance with constitutional principles and approved legal rules and
precedents. The privilege of directly interfering, in such cases,
with the administration of justice by indiscriminate newspaper
charges of perjury, bribery, corruption, and the like, against the
parties concerned, or against those conducting the trial, is not a
constitutional right. Such interference may be summarily pun-
ished as a contempt.
2. INTEGRITY OF LITIGANTS OR OFFICERS OF COURTS—HOW INVESTI-
GATED.— When the integrity of a litigant, witness, juror, judge or
other court officer is suspected in a cause pending, the legal rem-
edy by means of judicial investigation should be invoked.
3. PAST ACTION OF COURTS, AND PROCEEDINGS AS THEY TAKE PLACE
FROM DAY TO DAY, THE SUBJECT OF FAIR CRITICISM.— But the press
may, without liability to punishment for contempt, in the inter-
est of the public good, challenge the conduct of judges and other
court officers; also of parties, jurors and witnesses, in connection
with causes that have been wholly determined. It may also fairly
and reasonably review and comment upon court proceedings from
day to day as they take place.
4. CONSIDERATION DUE ORDERS OF COURT AND JUDGE PENDING DE-
TERMINATION OF QUESTION OF JURISDICTION.— If substantial doubt
exists concerning the jurisdiction of the court, pending the solu-
tion of this doubt, in good faith, and in a proper manner, the
orders and proceedings of the court or judge are entitled to the
same consideration as when the objection to jurisdiction is not
raised.

*On Petition for Rehearing.*

Mr. L. B. FRANCE, for plaintiffs in error.

THE ATTORNEY-GENERAL, Mr. RIDDELL and Messrs.
WOLCOTT & VAILE, for defendant in error.

CHIEF JUSTICE HELM delivered the opinion of the court.

We have invited briefs in support of the present appli-
cation, but counsel has elected to submit it upon the
briefs filed and oral argument made at the final hearing

of the cause. An extended and careful consideration of the suggestions embodied in the petition, and a re-examination of the subjects discussed in the opinion prepared by Mr. Justice HAYT, require a denial of the rehearing. The conclusion reached in that opinion, upon the principal question considered, is in harmony with the views expressed by the ablest jurists and law writers of the country. It could not be changed or modified without endangering, not only the best interests of the public in general, but also the highest welfare of the press itself. We recognize in this case, as we have heretofore done, the inestimable value of a fearless and independent press; but we would be grossly neglectful of our official duty were we, while carefully guarding the independence of the press, to forget that independence of the judiciary which is absolutely essential to constitutional government and liberty.

The opinion mentioned, in dealing with the question referred to, simply decides that, *during the pendency of specific judicial proceedings*, the court must be permitted to administer justice without molestation, in accordance with constitutional principles and approved legal rules and precedents. It determines nothing more; and it would be in the highest degree unworthy if it insisted upon less. The view is so simple, so equitable, so fundamentally important, that, when fairly understood, we do not believe its announcement will encounter a dissenting voice. Surely no man will claim that the litigant or the accused is not entitled to a fair and impartial judicial hearing. If he cannot rely with confidence upon the assurance that the court has power to secure him such a trial, then is one of the great departments of government a disastrous failure.

Relator was accused in the *habeas corpus* proceeding of perjury; and the integrity and fairness of the judge were challenged in the most contumelious and hurtful manner. If the right to make these accusations in a

pending case exists, it cannot be limited to the parties litigant or court, nor to the particular forms of assault adopted in this instance. Other officers of the court and jurors and witnesses may be in like manner accused. But if a great metropolitan newspaper, which is daily read by thousands in the community where a trial is progressing, can, with impunity, charge the litigant or his witnesses with perjury, the jurors with bribe-taking, and the court and its officers with corruption in the specific case, the supposed fairness and impartiality of the proceeding may be effectually destroyed, and the attempted administration of justice become a mockery. Such charges, when written, as they usually are, with the most positive assumptions of their truthfulness, accompanied by flaming head-lines, and often illustrated by clever cartoons, attract general attention and produce profound and wide-spread impressions. The litigant, if he be the object of the assault, is placed at a great disadvantage, and his rights are seriously prejudiced. The juror or witness, if the challenge pertain to his conduct, is incensed or intimidated, and his independence and usefulness are correspondingly impaired. The judge, if the shaft be leveled at him, is annoyed and exasperated, his judicial action is dishonored, and the tribunal over which he presides is degraded before the public. The inevitable result of these things is to embarrass, if not to defeat, the proper administration of justice. When the integrity of a litigant, witness, juror, judge or other court officer is suspected in a given case, the law itself provides means for immediate investigation. Courts, with extremely few exceptions, are always prompt to examine into charges brought to their notice impugning the conduct of parties in any way connected with pending litigation; and one having such charges to make may rely with confidence upon the fact that a deaf ear will not be turned to his petition, and that, if sustained, the guilty parties will receive adequate punishment. If the court itself be

accused, and a corrupt trial judge refuse appropriate relief by change of venue or otherwise, redress may always be had in a court of review. Such judicial investigations have great advantages for the discovery of truth. They are not so likely to reach erroneous conclusions, and inflict irremediable wrong, as are *ex parte* trials through the press.

It will be observed, however, that we are now insisting upon the foregoing judicial investigation only in cases actually pending. The right of the press without fear of punishment for contempt, in the interest of the public good, to challenge the conduct of parties, jurors and witnesses, and to arraign the judge himself at the bar of public opinion, in connection with causes that have been fully determined, is not denied by the decision filed in this case. Would greater liberty in this direction be advantageous to the public welfare? Does any progressive journalist, upon sober reflection, candidly believe that greater license would ever be beneficial to the press itself? The privilege of directly interfering, in a given case, with the administration of justice by indiscriminate newspaper charges of perjury, bribery, corruption, and the like, against the parties concerned, or against those who are conducting the trial, cannot be defended on the ground that it is a constitutional right, covered by the provision relating to freedom of speech and liberty of the press. Such a privilege was never contemplated by the framers of that instrument. It would be a dangerous license, subversive of one of the highest constitutional rights of the citizen,— the right to that protection in court of his person and property which is always expected, and which the law should always extend. Of what value to him is the right of trial by jury under the supervision of a court, if the result is predetermined and controlled by inimical extrinsic influences, against which he has no chance to contend? Moreover, every exercise of such a privilege assaults, and to a certain extent under-

mines, the constitutional functions and public usefulness of the judiciary itself.

Let our position not be misunderstood.   We recognize no limitation upon the privilege of newspapers to fairly and reasonably review and comment upon court proceedings from day to day as they take place.   We do not shield judges or parties, jurors or witnesses, from hostile criticism by the press.   We are not here concerned about private wrongs and grievances.   Each and all of the individuals attacked may, so far as the present discussion is concerned, if unjustly accused, be left to actions for damages, or to complaints and indictments for criminal libel.   We are dealing exclusively with the public welfare.   Every citizen has a profound personal interest in the enforcement of the fundamental right to have justice administered by the courts, under the protection and forms of law, free from outside coercion or interference. It is doubtful if anything else can be mentioned of greater importance than this right to society and the state; and it is not too much to say that the responsibility of the journalist for its enforcement is, because of the vantage ground he occupies, second only to that of the judge.

For the reasons stated in the opinion of Mr. Justice HAYT, we have assumed that the district judge had jurisdiction to issue the writ of *habeas corpus.*   Whether his jurisdiction in the premises would be maintained, were all the matters connected therewith before us, is a question upon which a majority of the court have declined to pass.   It is left undetermined until such time as its proper presentation imposes the duty of a decision.   But were we to concede that the jurisdiction of the district judge in the premises was doubtful, the position of respondents would not be materially different; for, if substantial doubt on this subject exists, pending the solution of this doubt, in good faith, and in a proper manner, the

orders and proceedings of the court or judge are entitled to the same consideration as when no such objection is made.    As we have said in another case, days of patient and careful investigation are sometimes necessarily consumed before the want of jurisdiction becomes apparent; and an admission that during this investigation witnesses may decline to testify, interlocutory orders may be disobeyed, and the proceedings may be treated with public contumely, would operate to deprive the court of power to determine the very point of jurisdiction itself.

Further extension of the present discussion is unnecessary.    It is manifest from what has already been said that we do not regard the principal question involved as one of private controversy merely, affecting only the parties here directly concerned.    It may truthfully be said that the privileges of the press, and the rights of the judiciary and the people of the entire state, are, in a measure, involved.    The rehearing is denied.

*Rehearing denied.*